## Carpenter *v.* Lancaster City, Appellant.

*Road law—Damages—Opening street—Damages for construction of sewer—Municipalities—Constitutional law.*

Where a city files a petition for the appointment of viewers to assess damages for the taking of private property for a street, and while such petition is pending files a second petition for the appointment of viewers to assess damages incident to the construction of a sewer in the same street, and proceedings on the first petition result in a judgment for the property owner which is paid, and proceedings on the second petition result in a judgment against the property owner, which is affirmed on appeal, the property owner cannot thereafter maintain an action of trespass against the city for damages claimed to have accrued between the date of the entry upon the land to construct the sewer, and the date of the payment of the damages resulting from the opening of the street.

In such a case the construction of the sewer imposed no new servitude on the land already appropriated for the street. The fact that the damages were not actually paid at the time of the appropriation is immaterial, inasmuch as the taxing power of the city furnished to the landowner the security contemplated by the constitutional requirement that no entry shall be made until the damages are paid or secured.

Argued Nov. 15, 1916. Appeal, No. 269, Oct. T., 1916, by defendant, from judgment of C. P. Lancaster Co., Aug. T., 1915, No. 91, on verdict for plaintiff in case of

Henry Carpenter v. City of Lancaster.   Before ORLADY,
P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER
and WILLIAMS, JJ.   Reversed.

Trespass to recover damages for an alleged wrongful
entry upon land to construct a sewer.   Before HASS-
LER, J.

At the trial it appeared that the entry upon the land
for the construction of the sewer was made in July, 1910.
At the time of the entry proceedings were pending to
assess damages for the taking of the same land for pub-
lic use as a street.   These proceedings resulted in a
judgment for $4,000 in favor of the plaintiff, but this
judgment was not paid until January 5, 1915.   The
damages claimed in the trespass suit were for the dep-
rivation of the use of the land between July, 1910, and
January, 1915, less a short period during which the land
was rented to a tenant.   Other facts appear by the opin-
ion of the Superior Court.

Verdict and judgment for plaintiff for $354.39.   De-
fendant appealed.

*Error assigned* was in refusing binding instructions
for defendant.

*Bernard J. Myers,* for appellant.

*John A. Nauman,* for appellee.

OPINION BY HEAD, J., July 13, 1917:

We learn from various statements scattered through
the record that for some time prior to the beginning of
any of the proceedings hereinafter referred to there had
appeared on the adopted plan of the City of Lancaster a
projected street called Susquehanna street.   As long as
it remained but a "paper street" no property right of
the owner of the soil was invaded and no cause of action
against the city accrued to him.   We further learn that

as early as August, 1900, proceedings were started in the Court of Quarter Sessions for the purpose of opening the street named. These consisted of a petition for the appointment of viewers and their subsequent action. It is evident the proceedings thus begun in 1900 proceeded with dignified leisure, for it was not until the December Term of 1910 that an issue was framed in the Common Pleas to try the appeal that had been taken from the award of the viewers.

Meantime, in July, 1910, the city entered on the property of the plaintiff within the lines of Susquehanna street as located for the purpose of laying a sewer in that street. But it first presented its petition to the court and had another set of viewers appointed "to assess the damages, if any, by reason of the laying of said sewer." There was thus one proceeding pending for the purpose of determining the damages and all of the damages suffered by the owner of the soil from the appropriation of a portion of his land for municipal use as a public street: another to ascertain the further damages, if any, he should receive by reason of the construction of a sewer on the line of that street. As the learned court below correctly holds in his opinion filed, "The construction of a sewer is one of the rights incident to the construction and maintenance of streets by a municipality." (Cases cited.) Upon the coming in of the two appeals it was wisely determined to try first that one arising out of the award of the viewers assessing the damages for the opening of a public street through the land of the plaintiff. That case was tried. A verdict was rendered for the plaintiff on which judgment was entered and the amount of it was paid by the city and the judgment was satisfied.

When the second appeal from the award of the viewers—who had been appointed to assess the damages alleged to have accrued to the property owner by reason of the entry of the city and the construction of a sewer—came on to be tried, the learned trial judge correctly in-

structed the jury the plaintiff could not recover. This for the manifest reason the city had already been charged with the damages for taking the property of the plaintiff for a city street, and the construction of a sewer imposed no new servitude on the land already appropriated. On appeal to the Supreme Court, the judgment was affirmed. The opinion of Mr. Justice POTTER in that case, although brief, appears to us to have disposed of every question raised by this record. "The court below rightfully held that the plaintiff was not entitled to anything upon this account (construction of sewer) as the damages which were awarded to him for the land occupied by the street covered the use of the same ground for the construction of a sewer......The construction of a sewer is one of the well recognized uses to which a street may properly be put and such a use must be deemed to have been contemplated when the damages were assessed for the taking of the land for street purposes." The significance of this language plainly is that the entry of the city on the land of the plaintiff within the lines of Susquehanna street caused him no damages cognizable by law apart from or in addition to the damages which would be awarded by the viewers appointed to fix the compensation he should receive for the appropriation of the land covered by the street. In a word, it has been judicially and finally determined that the plaintiff in his one award recovered all that was due him either for the appropriation of his land or the construction of the sewer or both.

Let us suppose for a moment that he had been permitted to recover on the second appeal. Would there have been still room for him to maintain this third action of trespass so that the city would be required to pay three verdicts and three judgments for the single appropriation of his property? If he could not have maintained this action of trespass in addition to the damages recovered in his second appeal, we are not able to see why

the situation is different because on that second appeal it was determined he could not recover.

The constitutional provision on the subject does not require that the damages be actually paid before an entry can lawfully be made on the land appropriated but only that they be either paid or secured. In the case of a quasi-public corporation, the filing of a bond, approved by the court, completes the act of appropriation. The company may thereafter lawfully enter upon the land and either party may at once begin proceedings to have the damages assessed. It was said in Fries v. Southern Penna. R. R., Etc., Co., 85 Pa. 73: "The security being given in due course of law the grasp of the owner upon his property is loosened by the Constitution itself," etc.

A city is one of the direct governmental agencies of the State. It is invested with the taxing power of the State. That taxing power furnishes to the landowner the security contemplated in and by the constitutional provision. This is just as true under the Constitution of 1874 as it was under the earlier one. In the Appeal of Delaware County, 119 Pa. 159, Mr. Justice PAXSON said: "Nor do we agree with the court below that the complainant is entitled to his injunction until the county shall make compensation for the injury. The only difference between the late Constitution and the present one in this respect is, that in the former, compensation was given only for property taken; in the latter, compensation is given for property taken, injured, or destroyed. In either case, compensation must be made or secured before such taking, injury, etc. It has been repeatedly held that the power of taxation in a municipal corporation is sufficient security for property taken by such corporation," etc.

Why, when the city had elected to open the street and evidenced that election by asking for the appointment of viewers, was it not in as good a position as a quasi-public company after it had filed its bond? Certainly not because it could be said the prospective damages of the

landowner had not been secured.  We have pointed out the security which protected him more thoroughly than any bond.  If the entry of the city was tortious, then the trespass was a continuing one and could have been restrained by injunction.  Would that have been possible?

It is true the special Act of April 18, 1873, P. L. 811, declares, "No street shall be opened or appropriated to public use until the owner of the ground over which the same may pass shall have been paid the damages," etc. The Constitution of 1874 declares that the right of a public or quasi-public corporation to appropriate private property for public use shall be just as complete when the damages have been secured to the landowner as when they have been actually paid.  There was therefore no tortious entry by the city.

We are of opinion that the plaintiff has failed to make out a case and that the jury, on the trial of the action of trespass, should have been directed to find a verdict for the defendant.  This being true, the motion for judgment for the defendant upon the whole record, notwithstanding the verdict, should have been granted.

The judgment is reversed and the record remitted to the court below with direction to enter judgment for the defendant notwithstanding the verdict, the appellee for costs.